IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNE MARIE G. | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 23-cv-2038 |
| | : | |
| LELAND DUDEK, | : | |
| *Acting Commissioner of Social Security*, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**CRAIG M. STRAW**                                                    **March 27, 2025**
**United States Magistrate Judge**

Plaintiff Jeanne Marie G. ("Plaintiff") seeks review of the Commissioner's decision denying her application for Disability Insurance Benefits ("DIB"). The parties consented to proceed before a Magistrate Judge,[1] and the matter was assigned to me.[2] For the following reasons, I deny Plaintiff's request for review and affirm the Commissioner's decision.

## I.     PROCEDURAL HISTORY

On August 4, 2020, Plaintiff filed an application for DIB under Title II of the Social Security Act ("SSA"), alleging a disability onset date ("AOD") of October 24, 2018. R. 11, 40, 197. The claims were initially denied on January 20, 2021, and again on reconsideration. R. 11, 38, 97-98, 117-18. Plaintiff then requested review by an Administrative Law Judge ("ALJ"). R. 142-43. On December 7, 2021, ALJ Stuart Gauffreau held a hearing with Plaintiff, Plaintiff's counsel Jess Levanthal, and Vocational Expert ("VE") Daniel Rappucci.[3] R. 11, 36.

---

[1] See Doc. 5; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[2] See Doc. 3.
[3] The hearing took place on the phone due to COVID-19 pandemic restrictions. R. 38

On January 10, 2022, the ALJ denied Plaintiff's application for DIB.  R. 12-24.  Plaintiff requested review of the decision from the Appeals Council on January 19, 2022, which was denied.  R. 1-3, 35.  Plaintiff's counsel then filed this action in federal court.  Doc. 1.  The parties subsequently submitted briefs addressing the relevant issues.  Docs. 9-11.

## II.    <u>LEGAL STANDARDS</u>

To prove a disability, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .  which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.    Whether the claimant is currently engaged in substantial gainful activity;

2.    If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.    If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," <u>see</u> 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.    If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform their past work; and

5.    If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform.

<u>See</u> <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national

economies based on their age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 191 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citation omitted).  It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudek, 181 F.3d at 431)).

## III.    ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ found that Plaintiff met the insured status requirement of the SSA through December 31, 2021.  R. 13.  Plaintiff had not engaged in substantial gainful activity since the AOD.  R. 13.  Plaintiff worked after the AOD, but this work activity did not result in sufficient earnings necessary to rise to the level of substantial gainful activity.  R. 13, 202, 221-23; see also 20 C.F.R. § 404.1571, et seq.  The ALJ found the following severe impairments: cervical spine disorder with radiculopathy, lumbar spine disorder with radiculopathy, Chiari malformation status-post decompression surgery with secondary headache disorder and cognitive dysfunction,

depression, and anxiety.[4]  R. 13; see also 20 C.F.R. § 404.1520(c).  The ALJ did not find any impairment, or a combination of impairments, that meet or medically equaled the severity of any Listings.[5]  R. 14; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  The ALJ also found that Plaintiff failed to meet the "paragraph B" criteria because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme limitation."[6]  R. 16.  Specifically, Plaintiff had moderate limitations in understanding, remembering, applying information, interacting with others, concentrating, persisting, maintaining pace, and adapting or managing oneself.  R. 15.  The ALJ further found that Plaintiff failed to meet the "paragraph C" criteria because the record did not show that Plaintiff has only marginal adjustment, that is, a minimal capacity to adapt to changes in Plaintiff's environment or to demands that are not already part of Plaintiff's daily life.  R. 16.

After considering the entire record, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could occasionally use hand controls, reach overhead, perform postural activities, and be exposed to unprotected heights, moving mechanical parts, extreme temperatures, humidity, and vibrations.  R. 16.  Plaintiff could

---

[4] The ALJ also found the following non-severe impairments: urinary incontinence, seasonal allergies, asthma, and obesity.  R. 14.  The ALJ, however, found that the non-severe impairments did not impose significant work-related limitations, did not last for a continuous period of twelve months, or cause more than a slight limitation in the Plaintiff's ability to function.  Id.

[5] The ALJ specifically discussed Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), 11.14 (peripheral neuropathy), 11.02 (epilepsy), 12.04 (Depressive, bipolar, and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders).  See R. 14-15.

[6] The four "paragraph B" criteria rate a claimant's functional limitations.  See 20 C.F.R. pt. 404, subpt. P, app. 1.  To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in the four areas of mental functioning.  Id. § 12.00(A)(2).  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id. § 12.00(F)(2)(e).  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id. § 12.00(F)(2)(d).

frequently reach in other directions, handle, and finger.  Id.  Plaintiff could never climb ropes,

ladders, and scaffolds.  Id.  Lastly, Plaintiff was limited to performing routine and repetitive tasks

not at a production rate, simple work-related decisions, and frequent interaction with supervisors,

co-workers, and the public.  Id.  The ALJ determined Plaintiff was unable to perform her past

relevant work as a lead tax examiner.[7]  R. 23; see 20 C.F.R. § 404.1565.  The ALJ additionally

found that there were other jobs in the national market that Plaintiff could perform including

table worker,[8] order clerk,[9] and masker.[10]  R. 23-24, 53.  Therefore, the ALJ found that Plaintiff

was not disabled.  R. 24.

     In her request for review, Plaintiff argues despite finding Dr. James Goodyear's opinion

generally persuasive, the ALJ failed to explain and include all of Dr. Goodyear's proposed

limitations in the RFC.  Doc. 9, at 4-7.  Plaintiff further argues the ALJ failed to sufficiently

consider the opinions of treating physician, Dr. Michael LoBianco, and treating therapist, Ms.

Samantha Bowens, and should have found those opinions persuasive.  Doc. 9, at 9-17.  Her last

argument is that the ALJ failed to include all of Plaintiff's credibly established limitations in the

RFC and hypothetical question to the VE.  Doc. 9, at 17-19.  The Commissioner argues that the

ALJ's determinations are supported by substantial evidence and the RFC included all credibly

established limitations.  Doc. 10.

## IV.     FACTUAL BACKGROUND

### A.  Non-medical evidence

---

[7] Lead Tax Examiner is a skilled, light exertion level position.  See U.S. Emp. Serv., DICTIONARY OF OCCUPATIONAL TITLES ("DOT") 160.167-038 (4th ed. rev. 1991); R. 22, 52.

[8] See DOT, 739.687-182.

[9] See DOT, 209.567-014.

[10] See DOT, 715.687-086.

Plaintiff was born in February 1980, and was 38 years old on her AOD.  R. 100, 218.  As a 38-year-old, Plaintiff is a younger individual under the SSA.  See 20 C.F.R. § 404.1563.  Plaintiff has a high school education and completed two years of higher education.  R. 42, 211.

Plaintiff first experienced the effects of her Chiari malformation ("CM")[11] in 2003.  R. 694.  Plaintiff was the victim of a motor vehicle accident in 2016 which exacerbated her CM symptoms.  R. 694-95.  Since then, Plaintiff experienced body numbness and headaches.  Id.  In April 2018, Plaintiff exhibited new symptoms, including pain at the back of her head, neck swelling, and mental fogginess.  R. 695.

Plaintiff testified that she was a lead tax examiner for the IRS for many years.  R. 42.  She stopped working for the IRS in 2017.  R. 43.  She stated because of her pain levels, suboccipital craniectomy, C1 laminectomy, and duraplasty, she could not walk or keep up with her workload.  R. 43-44.  Plaintiff testified she cannot sit or stand for a long period of time without experiencing pain.  R. 44, 234.  She also cannot walk long distances without pain.  R. 44.  She has difficulty getting out of bed because of her pain and depression.  R. 45.  Plaintiff also has a difficult time remembering and learning new information due to her pain and recall problems.  R. 44-45, 229.  She experiences headaches, ranging from mild to severe.  R. 45, 273.  The severity of the headaches can range from 2/10 or 3/10 to 9/10 or 10/10.  R. 766.  She experiences

---

[11] "Chiari malformations (CM) are caused by problems in the structure of the brain and skull.  In Chiari malformations, the lower part of the brain presses on and through an opening at the base of the skull and cerebellum into the spinal canal.  The cerebellum is the part of the brain that controls balance. . . . CM may develop when part of the skull is smaller than normal or misshapen, which can put pressure on the cerebellum, brain stem, and spinal cord and block the flow of cerebrospinal fluid (CSF) -- the clear liquid that surrounds and cushions the brain and spinal cord. . . . CM symptoms can include: headache, especially after sudden coughing, sneezing, or straining, neck pain, hearing or balance problems, muscle weakness or numbness, dizziness, . . ." NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, *Disorders: Chiari Malformations*, https://www.ninds.nih.gov/health-information/disorders/chiari-malformations (last visited Mar. 11, 2025).

mild headaches around two to three times a week but more severe headaches occur once a month.  R. 45.  The headaches are primarily felt in the occipital area of the head and, at times, become global with feelings of throbbing, pounding, and sharp stabbing.  R. 766.  Additionally, she suffers from dizziness with ringing in the ears.  R. 45.  The severe headaches cause her to be bedridden for hours with minimal ability to concentrate.  Id.  For treatment, Plaintiff received injections around her neck and lower back, yet the relief is temporary.  Id.

Plaintiff further testified she has a difficult time using her hands.  R. 47.  She drops objects frequently and feels a burning pain in her hands.  Id.  She cannot type or write for long periods of time without feeling pain.  R. 48.  Plaintiff testified she has depression and anxiety associated with her physical limitations and pain.  R. 49.  She notes she has no desire to take care of herself.  Id.  Plaintiff is very emotional, irritable, and self-conscious when she leaves the house.  Id.  She experiences panic attacks about once a week.  R. 49-50.  Plaintiff lives with her husband and two children.  R. 42.  She takes her medication, watches television, prepares simple meals, assists with laundry, helps get her children ready for school, occasionally goes shopping, attends birthday parties and holidays, drives her car, and helps with chores around the house.  R. 46, 223, 230-33.

**B.  Medical evidence[12]**

Although Plaintiff experienced symptoms of CM in 2003, she was formally diagnosed in 2016.  R. 766.  In the same year, Plaintiff had surgery to decompress the CM.  Id.

In July 2002, Dr. LoBianco became Plaintiff's primary care physician.  R. 898.  Dr. LoBianco saw Plaintiff approximately every three to four months.  Id.  On November 8, 2021,

---

[12] Here, I only outline the pertinent medical evidence related to the issues on appeal, which includes the evidence Plaintiff relies on in her brief, along with some information about Plaintiff's medical history and treatment for background.

Dr. LoBianco completed a Medical Source Statement of Ability to do Work Related Activities ("MSS") (Physical) after a physical assessment of the Plaintiff and concluded that Plaintiff's pain is incapacitating and restricts her from working.  R. 900.  He found that Plaintiff could only sit/stand/walk for less than 2 hours.  R. 898.  Plaintiff could not carry more than 10 pounds.  R. 898.  Plaintiff could rarely climb stairs and never climb ladders, crouch, squat, bend, stoop, and twist.  Id.  He opined that Plaintiff requires the ability to shift from sitting, standing or walking at will, and that Plaintiff had significant limitations reaching, handling, and fingering.  Id.  In an 8-hour day Plaintiff could grasp, turn, twist, and use fine manipulations 2% of the time and could never reach, including reaching overhead.  Id.  He opined Plaintiff would need to lie down or take unscheduled breaks every 5-10 minutes for 30 minutes at a time.  R. 899.  Plaintiff would be off task 25% or more of the time and is incapable of even low stress work.  Id.  Plaintiff did not need a cane or a handheld assistive device.  R. 898.

In December 2020, Plaintiff met with Dr. James Goodyear for a physical consultative examination.  R. 765-83.  In Dr. Goodyear's opinion, Plaintiff could continuously lift up to 10 pounds, frequently lift 11 to 20 pounds, and never lift 21 to 100 pounds.  R. 773.  Plaintiff could frequently carry up to 10 pounds, occasionally carry 11 to 20 pounds, and never carry 21 to 100 pounds.  Id.  Plaintiff could sit up to 3 hours, stand up to 30 minutes, and walk for 15 minutes at a time.  R. 774.  In an 8-hour workday, Plaintiff could sit for 8 hours, stand for 2 hours, and/or walk for 1 hour.  Id.  As for the Plaintiff's ability to walk, Plaintiff's gait is slow in cadence, but she does not use a cane or any other kind of assistive walking device.  R. 769, 774.  He further opined that Plaintiff could frequently reach, handle, finger, and feel and occasionally reach overhead, and push and pull bilaterally.  R. 775.  Dr. Goodyear supported his opinion by citing to Plaintiff's "neck (dpd), b/l cervical" and radiculopathy/arm and hand weakness.  Id.  Plaintiff

could occasionally operate foot controls with her right foot and frequently operate foot controls with her left foot.  R. 775.  Dr. Goodyear cited Plaintiff's "LBP (DDD) and Rad."  Id.  Plaintiff could frequently balance, occasionally climb stairs and ramps, stoop, and kneel, but never climb ladders or scaffolds, crouch, and crawl.  R. 776.  Plaintiff had the following environmental limitations: frequent exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritates, and extreme cold; occasional exposure to moving mechanical parts, operating a motor vehicle, extreme heat, and vibrations; and no exposure to unprotected heights.  R. 777.  Plaintiff could only tolerate quiet noise levels.  Id.  Dr. Goodyear cited to Plaintiff's headaches and fall risk.  Id.  Plaintiff could go shopping, travel unassisted, ambulate without assistive devices, use public transportation, prepare simple meals/feed herself, and perform personal hygiene.  R. 778.  Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, climb a few stairs at a reasonable pace, or sort, handle or use paper/files.  Id.

Dr. Goodyear also assessed Plaintiff's range of motion.  R. 779-80.  Plaintiff's shoulder forward elevation was 120/150 degrees bilaterally, abduction was 120/150 bilaterally, and adduction was within normal limits.  R. 779.  Plaintiff's right knee flexion-extension was 130/150 degrees, and her left knee flexion-extension was 140/150 degrees.  Id.  Her forward hip flexion was 70/100 degrees on the right and 90/100 degrees on the left.  R. 780.  Backward hip extension was 20/30 degrees on the right and 25/30 degrees on the left, abduction was 25/40 on the right and 35/40 on the left, adduction was 15/20 on the right and 20/20 on the left.  Id.  Plaintiff's cervical region lateral flexion was 25/40 bilaterally, flexion was 25/30 and extension was 20/30, and rotation was 30/45 bilaterally.  Id.  Her lumbar region flexion and extension was 45/90, lateral flexion was 10/20 on the right and 20/20 on the left.  Id.  All other movements were within normal limits.  R. 779-80.

Ms. Bowens is Plaintiff's treating mental health provider.  R. 48.  Plaintiff saw Ms.

Bowens about once a week for therapy.  Id.  In August 2021, Ms. Bowens completed a MSS

(Mental) detailing Plaintiff's limitations.  R. 22, 785-86.  Ms. Bowens found that Plaintiff is

unable to meet the competitive standards in most areas of mental work-related functioning.  R.

785.  She opined that Plaintiff had a limited, but satisfactory, ability to interact appropriately with

the general public, and seriously limited ability to adhere to basic standards of neatness and

cleanliness.  Id.  Plaintiff also could not complete a normal workday and workweek without

interruptions from psychologically based symptoms.  Id.  Ms. Bowens noted that, "Client has

difficulty maintaining time/organization skills.  Client has difficulty with memory and staying on

task due to severe depression and anxiety."  Id.  Further, Ms. Bowens opined that Plaintiff would

be absent from work more than three days per month.  R. 22, 786.  She concluded that the

Plaintiff is unable to meet competitive standards in virtually all abilities and aptitudes needed to

do work.  R. 785.  Plaintiff receives treatment once a week but has struggled with severe

depression and anxiety for over two years.  R. 787.  She also stated that Plaintiff is unable to

process abrupt changes and instability, which could lead to dangerous or impulsive behavior

related to her safety and the safety of others.  Id.

**V.    Discussion**

    **A.  The ALJ properly considered Dr. Goodyear's, Dr. LoBianco's, and Ms. Bowens'
       opinions, and substantial evidence supports the ALJ's conclusions.**

First, Plaintiff argues the ALJ failed to explain and include all of the limitations Dr.

Goodyear found in Plaintiff's RFC assessment, although the ALJ held that Dr. Goodyear's

opinion was generally persuasive.  Doc. 9, at 4-7.  Plaintiff claims that the ALJ should have

found Dr. Goodyear's opinion fully persuasive and adopted all of his proposed limitations

because the opinion was supported by and consistent with the record evidence.  Id. at 4-9.

Plaintiff also asserts that the ALJ erroneously found Dr. LoBianco's and Ms. Bowens' opinions unpersuasive and failed to provide adequate reasoning for finding the opinions unpersuasive. Id. at 9-17. Instead, Plaintiff contends that Dr. LoBianco's and Ms. Bowens' opinions were supported by and consistent with the record evidence. Id. The Commissioner argues that the ALJ's decision to find Dr. Goodyear's opinion generally persuasive is supported by the record evidence and that the ALJ did not need to adopt all of the proposed limitation. Doc. 10, at 8. The Commissioner also asserts that the ALJ sufficiently explained why Dr. LoBianco's and Ms. Bowens' opinions were unpersuasive and that the record evidence supports the ALJ's findings. Id. at 11-16.

An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a)(1). The RFC is based on all the relevant and other evidence in the case record. Id. § 404.1545(a)(3). It is the ALJ's exclusive responsibility to determine the claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ must include in the RFC any credibly established limitations the record supports. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).

The ALJ's RFC assessment must also be "'accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). Nevertheless, the ALJ is not required to discuss or refer to every piece of the relevant evidence in the record when assessing an RFC. Id. at 42. Once an ALJ has made an RFC determination it will not be set aside provided substantial evidence supports the RFC. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

An "ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources.'"[13]  Thomas v. Kijakazi, No. 21-cv-3547, 2022 WL 17880922, at *6 (E.D. Pa. Dec. 22, 2022) (quoting Cheryl F. v. Kijakazi, No. 20-cv-16052, 2022 WL 17155681, at *10 (D.N.J. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(a)).  Instead, the ALJ must evaluate the persuasiveness of the opinion based on five factors set forth in 20 C.F.R. § 404.1520c(c).  See Thomas, 2022 WL 17880922, at *6; see also Lawrence v. Comm'r of Soc. Sec., No. 21-cv-01239, 2022 WL 17093943, at *4 (M.D. Pa. Nov. 21, 2022) ("Rather than assigning weight to medical opinions, [an ALJ] will articulate how persuasive he or she finds the medical opinions.") (alteration in original) (citations and internal quotations omitted).  The factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating relationship and the frequency of exams; (4) the medical source's specialization; and (5) other factors.  20 C.F.R. § 404.1520c(c).  The most important factors when determining the persuasiveness of a medical opinion are supportability and consistency.  Id. § 404.1520c(a); Rose v. Kijakazi, No. 20-3222, 2022 WL 910093, at *5 (E.D. Pa. March 29, 2022).

---

[13] The prior regulations provided that more weight should be given to treating sources.  See 20 C.F.R. § 404.1527.  Effective March 27, 2017, the SSA amended the rules addressing the evaluation of medical evidence and eliminated the assignment of more weight to certain medical opinions.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Now five factors are considered for disability claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c(c).  Here, the claim was filed on August 4, 2020, so the five-factor test applies.  See R. 11.

Supportability is "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." Cota v. Kijakazi, No. 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022); 20 C.F.R. § 404.1520c(c)(1). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which the medical source's opinion is consistent with the record as a whole." Cota, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). A key difference between the two is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim . . . .'" Gongon v. Kijakazi, 22-cv-384, 2023 WL 3919467, at *13 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ is only required to explain the supportability and consistency factors in the written opinion. 20 C.F.R. § 404.1520c(b)(2). Even though the ALJ is not bound to accept any physicians' conclusions, the ALJ "'may not reject them unless [he] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" Balthasar v. Kijakazi, No. 20-cv-06181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022) (quoting Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003) (additional quotations and citations omitted)); see also Densberger v. Saul, No. 20-cv-772, 2021

WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) ("[P]rovided that the decision is accompanied by an adequate, articulated reason, it is the province and duty of ALJ to choose which medical opinions and evidence deserve greater weight.").

The ALJ is not expected "to make reference to every relevant treatment note in a case." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  See Benson v. Kijakazi, No. 21-1345, 2022 WL 17406051, at n.1 (W.D. Pa. Dec. 2, 2022) (alteration in original quotations) ("[E]ven if an ALJ finds an opinion to be persuasive or very persuasive, the ALJ is 'not required to adopt all of [the medical source's] opinion solely because [he/she] found the opinion as a whole persuasive.'") (citing Wilkinson v. Comm. of Soc. Sec., 558 F. App'x. 253, 256 (3d Cir. 2014); see also Mathews v. Kijakazi, No. 21-1140, 2022 WL 4535087, at n.2 (W.D. Pa. Sept 28, 2022) ("There is no corollary requirement that an ALJ explicitly reject any part of a persuasive/very-persuasive opinion that does not make it into the RFC verbatim and provide an explanation for having purportedly rejected such evidence.").

When determining Plaintiff's RFC, the ALJ considered the opinions of Dr. Goodyear, Dr. LoBianco and Ms. Bowens.  R. 21-22.  Ultimately, the ALJ found that Plaintiff had the RFC to perform sedentary work—except Plaintiff could occasionally use hand controls, reach overhead, perform postural activities, and be exposed to unprotected heights, moving mechanical parts, extreme temperatures, humidity, and vibrations.  R. 16.  Plaintiff could frequently reach in other directions, handle, and finger.  Id.  Plaintiff could never climb ropes, ladders, and scaffolds.  Id. Plaintiff was limited to performing routine and repetitive tasks not at a production rate, simple work-related decisions, and frequent interaction with supervisors, co-workers, and the public.  Id.

Regarding Dr. Goodyear's opinion, the ALJ found:

> Following a December 2020 physical CE, [Dr. Goodyear] determined that the claimant is capable of a range of light work

activity with two hours standing and one hour walking in an eight-hour workday. The doctor further noted that the claimant could occasionally reach overhead and push/pull, but frequently perform all other manipulative functions with the bilateral upper extremities, frequently operate foot controls with the left foot and occasionally with the right, frequently balance, occasionally climb stairs and ramps, stoop, and kneel, and never climb ladders or scaffolds, crouch, or crawl. Dr. Goodyear also indicated that the claimant could tolerate quiet noise, frequent exposure to humidity and wetness, pulmonary irritants, and extreme cold, occasional exposure to moving mechanical parts, operating a motor vehicle, extreme heat, and vibrations, and no exposure to unprotected heights. Finally, the doctor noted that the claimant is not able to walk a block at a reasonable pace on rough or uneven surfaces, climb a few steps at a reasonable pace with the use of a single handrail, or sort, handle, or use paper/files. This opinion is generally persuasive, as a range of essentially sedentary activity with additional manipulative and postural restrictions are supported by the doctor's own examination findings and consistent with the record as a whole. However, the doctor's limitations on walking, as well as his proposed environmental and daily activity limits are somewhat overstated based on the claimant's daily activities.

R. 21 (internal citations omitted).

Here, the ALJ conducted the required supportability and consistency analysis, and explained why he found Dr. Goodyear's opinion generally persuasive. See 20 C.F.R. § 404.1520c(b)(2); see also Densberger, 2021 WL 1172982, at *8. The ALJ explains that Dr. Goodyear's opinion is generally persuasive because Dr. Goodyear's walking, environmental and daily activity limitations are somewhat overstated based on the claimant's daily activities. Id. Reading the opinion as a whole and following the ALJ's in-text citations, the ALJ addressed supportability by citing to Dr. Goodyear's records indicating that Plaintiff did not require an assistive device to walk, despite Dr. Goodyear's opinion that Plaintiff could not walk a block on rough or uneven surfaces. R. 769, 774. Further, Dr. Goodyear's records note Plaintiff had intact sensation, 4-5/5 upper and lower extremity strength, intact, synchronous, and coordinated fine motor dexterity, which do not support Dr. Goodyear's proposed limitations. Id. The ALJ also

noted that Dr. Goodyear's walking and environmental limitations are inconsistent with the record evidence.  R. 21.  The ALJ supported this conclusion by citing that Plaintiff cared for her mother and children, and is able to occasionally do laundry, dust and wipe the counters, pain management notes that stated Plaintiff's medication regimen allowed her to maintain her activities of daily living without side-effects, pain improvement with treatment, lack of assistive devices, and a lack of focal neurological deficits.  R. 36-57, 229-38, 270-74, 533-47, 847-85.  The evidence cited demonstrates that Dr. Goodyear's recommended walking, environmental, and daily activity limitations are inconsistent with the record evidence.  Because the ALJ conducted the requisite supportability and consistency analysis and provided sufficient reasons to find Dr. Goodyear's opinion generally persuasive, substantial evidence supports the ALJ's conclusions.  See 20 C.F.R. § 404.1520c(b)(2); see also Densberger, 2021 WL 1172982, at *8; see Jones, 364 F.3d at 504-05 (finding explanation sufficient to permit meaningful review when the ALJ cited to record evidence, objective evidence, and addressed contradicting evidence when formulating the RFC).

Additionally, Plaintiff argues that the ALJ failed to include all of Dr. Goodyear's proposed limitations in Plaintiff's RFC, although the ALJ found Dr. Goodyear's opinion generally persuasive.  Doc. 9, at 4-7.  For the reasons outlined above, the ALJ declined to adopt some of Dr. Goodyear's proposed limitations.  The ALJ is not required to adopt all of the limitations from an opinion the ALJ finds persuasive.  See Benson, 2022 WL 17406051, at n.1 (alteration in original quotations) (citing Wilkinson, 558 F. App'x. at 256) ("[E]ven if an ALJ finds an opinion to be persuasive or very persuasive, the ALJ is 'not required to adopt all of [the medical source's] opinion solely because [he/she] found the opinion as a whole persuasive.'"); see also Mathews, 2022 WL 4535087, at n.2 ("There is no corollary requirement that an ALJ

16

explicitly reject any part of a persuasive/very-persuasive opinion that does not make it into the

RFC verbatim and provide an explanation for having purportedly rejected such evidence.").

Thus, the ALJ was within his discretion to reject some of Dr. Goodyear's proposed limitations.

Regarding Dr. LoBianco's opinion, the ALJ reasoned:

> In November 20201 [sic], the claimant's primary care providers,
> Michael Lobianco, D.O. completed a physical assessment of the
> claimant, in which he noted that she is able to rarely lift and carry
> less than 10 pounds and sit and stand/walk for less than two hours
> each total in an eight-hour workday with an ability to shift positions
> at will. The doctor further noted that the claimant could rarely climb
> stairs and never perform any other postural activities. Dr. Lobianco
> also indicated that the claimant has significant limitation with
> reaching, handling, and fingering, noting that she is capable of using
> her hands and fingers for grasping, turning, or twisting objects or
> fine manipulation for only 2% of a workday with no ability to use
> her arms for reaching. The doctor further asserted that the claimant
> would likely be "off-task" while working for more than 25% of a
> workday, she would require an ability to lie down or take
> unscheduled breaks every 5 to 10 minutes for 30 minutes, and she is
> incapable of even "low stress" work. Finally, Dr. Lobianco opined
> that the claimant's pain is found to be incapacitating to the claimant,
> physical activity increases her pain to the extent that medication
> and/or bed rest is necessary, and medication impacts the claimant's
> work ability to the extent that she is restricted from the workplace
> and unable to function at a productive level. This opinion is not
> persuasive, as it is not well supported by the doctor's own treatment
> record and physical examination findings. Further, such extreme
> limits are not consistent with the record as a whole, including the
> claimant's reported daily activities.

R. 21 (internal citations omitted).

Here, the ALJ explained that Dr. LoBianco's opinion is unpersuasive because his opinion

was not supported by his own records, and the limitations he recommended were inconsistent

with the record evidence.  Id.  The ALJ noted earlier in the opinion that Dr. LoBianco's treatment

records demonstrated unremarkable mental status examinations other than regular depressive

and/or anxious mood and affect, and treatment that was routine in nature.  R. 20, 901-75.

Plaintiff also demonstrated normal behavior and good eye contact.  R. 15, 901-75.   Dr.

LoBianco's records showed Plaintiff had linear and goal-directed thoughts without evidence of destructivity and impaired attention, concentration, or cognitive functioning.  Id.  The ALJ also noted that despite Plaintiff claiming difficulty standing and walking for more than 5 to 10 minutes, Dr. LoBianco did not recommend or note use of an assistive device.  R. 19, 898.  Dr. LoBianco's treatment records also showed Plaintiff was able to respond to questions from medical providers and did not mention any significant memory or cognitive impairment.  R. 15, 901-75.

Reading the opinion as a whole and following the ALJ's in-text citations, the ALJ addressed the consistency of Dr. LoBianco's opinion by citing to other record evidence demonstrating intact sensation, 4-5/5 upper and lower extremity strength, and intact, synchronous, and coordinated fine motor dexterity.  R. 765-83.  Plaintiff also reported that she cared for her mother and children, prepared simple meals, and was able to occasionally do chores.  R. 36-57, 229-38, 270-74, 765-83.   Pain management notes stated that Plaintiff's medication regimen allowed her to maintain her activities of daily living without side-effects, her pain improved with treatment, she did not use an assistive device, she had no focal neurological deficits on examination, had conservative mental health treatment, and that documentation did not support her claimed mental health symptoms.  R. 36-57, 533-47, 765-83, 847-85.  The ALJ provided sufficient reasoning to find that Dr. LoBianco's opinion unpersuasive, and substantial evidence supports the ALJ's conclusions.  See 20 C.F.R. § 404.1520c(b)(2); see also Densberger, 2021 WL 1172982, at *8; see Jones, 364 F.3d at 504-05 (finding explanation sufficient to permit meaningful review when the ALJ cited to record evidence, objective evidence, and addressed contradicting evidence when formulating the RFC).

Regarding Ms. Bowens' opinion, the ALJ found:

> In terms of the claimant's mental functioning, in August 2021, Samantha Bowens, LCSW, completed a mental residual functional capacity assessment of the claimant reflecting an "inability to meet competitive standards" is most areas of mental work-related functioning. Ms. Bowens also noted that the claimant has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life. Finally, it was noted that the claimant would likely be absent more than three days per month as a result of her impairments or treatment. This opinion is not persuasive, as it is not well supported by the provider's own treatment records and mental status findings. Further, this opinion is not consistent with the record as a whole, including the claimant's limited formal treatment history and reported daily activities.

R. 22 (internal citations omitted).

Here, the ALJ explained that Ms. Bowens' opinion is unpersuasive because Ms. Bowens' opinion was not supported by her own treatment records and mental status findings, and the limitations recommended were inconsistent with the record evidence and daily living activities. Id.  The ALJ noted earlier in the opinion that Ms. Bowens' treatment records demonstrated unremarkable mental status examinations other than regular depressive and/or anxious mood and affect, and routine treatment.  R. 20, 847-85.  The ALJ also stated that despite Ms. Bowens' opinion that Plaintiff has significant mental limitations, Ms. Bowens' records demonstrated that Plaintiff had good insight and judgment, used social media, stayed busy by walking the dog, and self-reported "doing well."  R. 847-85.  Ms. Bowens' records also show Plaintiff worked toward her goals, practiced self-care and coping skills, responded well to medication, and had normal linear and organized speech.  Id.  Plaintiff reported taking care of her mother, sought support groups for pain management and depression symptoms, had improvement in symptoms, reported only one panic attack, and self-reported being the provider and caregiver for her family.  Id. Thus, the ALJ addressed the supportability of Ms. Bowen's opinion.

The ALJ addressed consistency by citing record evidence showing that Ms. Bowens' proposed limitations were inconsistent with the record as a whole.  R. 21.  The ALJ cited to

numerous entries in the record that demonstrated Plaintiff could prepare simple meals, drive, manage her family's money, shop, help her children with homework, participate in parties and holidays, spend time with friends and family, was cooperative with her doctors and medical professionals, maintained good hygiene and grooming, had intact recent and remote memory, and possessed good judgment with no acute distress.  R. 230-33, 272, 768, 771, 902.  Thus, the ALJ sufficiently explained why he found Ms. Bowens' opinion unpersuasive.  The ALJ's conclusion is supported by substantial evidence.  See 20 C.F.R. § 404.1520c(b)(2); see also Densberger, 2021 WL 1172982, at *8; see also Mathews, 2022 WL 4535087, at n.2 (alteration in original quotation marks) (citing Jones, 364 F.3d at 505) ("An ALJ's decision must reflect a thorough consideration of the evidence and permit 'meaningful review.'"); Gamret v. Colvin, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citing Hodes v. Apfel, 61 F.Supp.2d 798, 806 (N.D. Ill. 1999)) (describing an ALJ's task as "build[ing] an accurate and logical bridge between the evidence and the result").

## B.  Substantial Evidence Supports the Functional Limitations the ALJ Included in Plaintiff's RFC and in the Hypothetical Questions to the VE.

Plaintiff's final claim is that ALJ failed to include all of Plaintiff's credibly established limitations in the RFC and in the hypothetical questions posed to the VE.  Doc. 9, at 17-20. Plaintiff argues that the ALJ improperly evaluated the opinions of Dr. Goodyear, Dr. LoBianco, and Ms. Bowens, and thus incorrectly excluded the credibly established limitations from Plaintiff's RFC.  Id.  Plaintiff also notes that if the ALJ included occasional use of the hands, all three jobs the ALJ found Plaintiff could perform would have been excluded.  Id.  The Commissioner argues that the ALJ's evaluation of the medical opinions was supported by substantial evidence and the RFC included all credibly established limitations.  Doc. 10, at 16-17.

An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all the relevant evidence in a case record—medical and nonmedical. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(1), (a)(3). It is the exclusive responsibility of the ALJ to determine the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). A VE or specialist may offer an expert opinion in response to a hypothetical question posed to him or her about the claimant's physical and mental limitations and their effects on the claimant's ability to perform previous work or participate in jobs in the national economy. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). An ALJ is required to include in the RFC any credibly established limitations supported by the record. Salles, 229 F. App'x at 147. Relatedly, a hypothetical question to the VE must include all the functional limitations the record supports and an ALJ adopts. See Chrupcala, 829 F.2d at 1276; Ramirez, 372 F.3d at 554-55; Rutherford, 339 F.3d at 554.

Here, the ALJ did not adopt all of the limitations proposed by Dr. Goodyear, Dr. LoBianco, and Ms. Bowens because he found some or all of their proposed limitations were unsupported by or inconsistent with the record evidence. R. 15-22. As discussed above, substantial evidence supports the ALJ's findings and the ALJ provided adequate reasoning to support his conclusions. Although the ALJ found Dr. Goodyear's opinion generally persuasive, the ALJ was not required to adopt every limitation Dr. Goodyear proposed, and he adequately explained why he adopted the limitations he did. See Benson, 2022 WL 17406051, at n.1 (citing Wilkinson, 558 F. App'x. at 256); see also Mathews, 2022 WL 4535087, at n.2.

Accordingly, Plaintiff's claim regarding error in the ALJ's RFC determination and hypothetical to the VE lacks merit. The Court finds no error.

## IV.    Conclusion

For the reasons discussed above, the ALJ properly considered and evaluated the opinions of Dr. Goodyear, Dr. LoBianco, and Ms. Bowens.  The ALJ also properly included the credibly established limitations in Plaintiff's RFC.  Accordingly, Plaintiff's request for review is **DENIED**.  An appropriate order accompanies this opinion.


BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge